IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 07-104-JJF |
| PERCY A. SKINNER, | : |
| Defendant. | : |

**DEFENDANT'S MOTION TO SUPPRESS**
**PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Percy A. Skinner, by and through his undersigned counsel, Edson A. Bostic, Federal Public Defender for the District of Delaware, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence obtained as a result of the illegal seizure and arrest on or about June 26, 2007, including all statements made during, or subsequent to, the illegal seizure and arrest.

In support of this motion, Mr. Skinner submits as follows:[1]

1.   On June 24, 2007, Wilmington police officers responded, after receiving a complaint that shots had been fired, to the 1300 Block W. 4th Street, Wilmington, Delaware. Upon arrival, the

---

[1] The facts contained in paragraphs 1-12 of this motion were taken from the discovery. Mr. Skinner cites these facts in his motion, but does not concede that the events transpired as stated by the arresting officers. Additionally, Mr. Skinner notes that the discovery, which has been redacted, may contain additional information not included in this motion. Mr. Skinner submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

officers found blood on the sidewalk and numerous shell casings.

2.      Bystanders informed the officers that several people were struck by gun fire and went to St. Francis Hospital in personal vehicles. The officers reported to the hospital and found four alleged victims and a witness.

3.      Although the facts are not clear from the discovery, the witness apparently informed Detective Scott C. Chaffin that several individuals had been sitting in an unspecified location, when an unknown black male walked past them. The subject allegedly stated "watch out for the police," and continued around the corner. A short time later, the subject walked back to the individuals and allegedly shot several rounds at them. The four alleged victims were struck by bullets and subsequently driven to the hospital.

4.      Although, the facts are not clear from the discovery, Detective Tabor stated that three of the alleged victims gave a similar account of the incident but could not identify the shooter. Detective Tabor also spoke to the fourth alleged victim, who stated that one of the victims commented, "watch out for that guy," in reference to the unknown black male. According to the fourth alleged victim, the unknown black male subsequently walked up to, and shot at, the individuals. During a subsequent interview, the fourth victim stated that he did not see anyone shoot back at the subject, but later heard one of the victims state that he had shot the suspect.

5.      Detective Tabor was later advised that a 1997 Buick Park Avenue was found on I-95 with bullet holes in it. The vehicle's owner stated that she had been inside of her house and heard the gunshots at the time of the shooting. The owner stated that she went outside, saw the alleged

shooting victims and drove her son and two of the alleged victims to the hospital[2]. The vehicle's owner stated that the vehicle was struck during the gunfire.

6. Law enforcement officials stated that upon processing the crime scene, the recovered shell casings contradicted the victims' statements that there was one suspect with one weapon. Instead, law enforcement officials concluded that more than one armed individual was involved in the shooting.

7. According to the discovery, large caliber projectiles were removed from two of the victims during surgery, and from the vehicle. Detective Tabor also took one of the victim's clothing, which had been removed by hospital staff during treatment, and found two .45 caliber rounds in the rear pants pocket. The rounds matched a round recovered from the crime scene.

8. During a door-to-door canvass, a witness stated, after the shooting and before the police arrived that he or she saw someone run into 1316 W. 4th Street.

9. Based upon these facts, on June 25, 2007, officers applied for, and obtained, a search warrant for the 1316 W.4th Street residence, as well as an additional residence at 120 Donhaven Drive, New Castle, Delaware. Specifically, the warrant identified the following: "any and all handgun(s), firearm(s), and/all ammunition . . . any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearms, and any/all evidence pertinent to this investigation." (A copy of the warrant is attached hereto as Exhibit "A".)

10. On June 26, 2007, officers executed the search warrant at the residence (1316 W. 4th Street). Officers allege that they repeatedly knocked on the front and rear doors, forced entry into

---

[2]The vehicle's owner, whose name was redacted, appears to be the mother of one of the victims.

the residence and announced their presence. After clearing the residence, officers proceeded to a second floor bedroom. Officers kicked in the bedroom door and saw Mr. Skinner and a female lying in bed. Officers alleged that they saw a black handgun lying next to Mr. Skinner's pillow. Officers arrested Mr. Skinner and secured the weapon without incident. The weapon had one 9mm round in the chamber and fourteen 9mm rounds in the magazine. Officers also found Russell Monroe in a middle bedroom, but recovered no additional evidence.

11. Officers transported the three individuals to the police station, and interrogated the female. The female, who had an active capias, stated that she had no knowledge of the weapon.

12. Officers alleged that they advised Mr. Skinner of his Miranda warnings, and he stated that he had only been at the home for a short time before the officers arrived. Mr. Skinner allegedly stated that he had no knowledge of the handgun, and that "it was crazy." Mr. Skinner further allegedly stated that he knew the owner of the residence and had permission to be at the residence.

13. On July 24, 2007, Mr. Skinner was indicted for knowingly possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a) (2).

14. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. There is a presumptive requirement that searches and seizures be carried out pursuant to a warrant. See Katz v. United States, 389 U.S. 347, 357 ("[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.") (internal citations omitted).

15.     "One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'" United States v. Zimmerman, 277 F.3d 426 (3d Cir. 2002) (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). In Zimmerman, the Third Circuit stated that the Fourth Amendment prohibits a general warrant, and that the magistrate must determine that there is a "fair probability that . . . evidence of a crime will be found in a particular place." Id. at 432 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The Court further stated that the "warrant must also describe things to be seized with sufficient particularity and be 'no broader than the probable cause on which it is based.'" Zimmerman, 277 F.3d at 432 (quoting United States v. Weber, 923 F2d 1338 (9th Cir. 1991). See also Steele v. United States, 267 U.S. 498 (1925) (stating that a search warrant should leave "nothing . . . to the discretion of the officer executing the warrant."). Thus, the Fourth Amendment requires that probable cause must exist for each item listed in a search warrant, and each item must be particularly described. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars, 307 F.3d 137, 148 (3d Cir. 2002).

16.     Based on a totality of the circumstances, no probable cause existed for issuance of a search warrant, and, moreover, the warrant did not particularly describe the items and/or individuals to be seized.  See e.g., Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) (stating that general warrants violate the Fourth Amendment because they essentially authorize "a general exploratory rummaging in a person's belongings, and citing examples of general requests, including "evidence of smuggled goods," "evidence of stolen property," and "books, records, pamphlets, cards, lists, memoranda, pictures, recordings and other written instruments. . . .") (internal citations omitted). Here, the officers were aware of the specific type of handgun alleged to be involved in the shooting,

but did not specify the handgun sought to be seized. Because the officers' search and seizure violated the Fourth Amendment, all evidence must be suppressed in accordance with the "fruit of the poisonous tree doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

17. Mr. Skinner further submits that any alleged statements made during, or subsequent to, his unlawful arrest should be suppressed pursuant to the Fifth Amendment and Miranda v. Washington, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement).

18. Mr. Skinner reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of an evidentiary hearing in this matter.

**WHEREFORE,** Mr. Skinner respectfully submits that this Court conduct an evidentiary hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all evidence obtained as a result of the illegal seizure and Mr. Skinner's arrest on or about June 26, 2007, including all statements made during, or subsequent to, the illegal seizure.

                                                Respectfully submitted,

                                                /s/_____

                                                Edson A. Bostic
                                                Federal Public Defender
                                                Attorney for Percy A. Skinner

Federal Defender's Office
District of Delaware
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010

Dated: September 7, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-104-JJF |
| | : | |
| PERCY A. SKINNER, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

**AND NOW**, this \_\_\_\_ day of _____, 2007, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by law enforcement officials on or about June 26, 2007, and statements made by Defendant to law enforcement officials on or about June 26, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

**BY THE COURT:**

_____
Honorable Joseph J. Farnan, Jr.
United States District Court Judge

# EXHIBIT A

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

IN THE MATTER OF:

| | |
|---|---|
| Beltran, Jamie L. (wmh 07/28/1990), a.k.a. "Jimmy" | ) AFFIDAVIT |
| The entire premises known as | ) AND |
| 120 Donhaven Drive, | ) APPILCATION |
| New Castle, Delaware 19720, | ) FOR |
| And | ) SEARCH |
| 1316 W. 4th Street, | ) |
| Wilmington, Delaware 19805 | ) |
| To include any/all outbuildings, | ) |
| Storage areas, and cartilages. | ) |

NEW CASTLE COUNTY )
                   ) SS
STATE OF DELAWARE )

BE IT REMEMBER, on this __25th__ DAY OF __June__ 2007.

before me, the Honorable Judge __Vernon A. Taylor__ personally appeared **Detective Scott C. Chaffin** who being by me duly sworn do depose and say: That there is reason to believe and that they do believe that located in or near: **120 Donhaven Drive, New Castle, Delaware 19720** which is/was owned or occupied by a **Jamie L. Beltran (wmh 07/28/1990)** that there has been and/or is now and/or will be located and/or concealed property, articles, papers, or things, in or at on said person(s), place(s), and/or thing(s), or on the occupant(s) thereof namely: **any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.**

Which said property, articles, and/or things were, are or will be possessed and/or used, and/or represent evidence of a violation of the Delaware Criminal Code, Title 11, Section 0613, in that Assault 1st Degree.

And, the facts tending to establish probable cause for believing that foregoing grounds for the application exists as follows:

SEE ATTACHED TEXT

1. In the continuing investigation into the illegal activities occurring within the City of Wilmington, Delaware, your affiant, Detective Scott C. Chaffin, a member of the Wilmington Department of Police, Criminal Investigation Division, was assigned to investigate a shooting that occurred in the 1300 Blk. W. 4th Street. This location is within the jurisdictional boundaries of the City of Wilmington, County of New Castle, State of Delaware. Your affiant has been employed by the Wilmington Department of Police for twelve years and has authored and executed numerous search warrants.

2. Your affiant can truly state that on the 24th of June 2007 at approximately 0140 hours, Wilmington Officers responded to the 1300 Blk. W. 4th Street regarding a complaint of shots fired. Upon arrival, officers located blood on the sidewalk and numerous shell casings. Officers were advised by bystanders that several people were reportedly stuck by the gun fire and went to St. Francis Hospital by personal vehicles. Uniform officers and this officer responded to St. Francis Hospital and located four victims, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

▊▊▊▊ had a gunshot wound to her abdomen. ▊▊▊▊ had gunshot wounds to his left arm and left thigh. ▊▊▊▊ had gunshot wounds to his left arm and left buttocks. ▊▊▊▊ had gunshot wounds to his left foot, left arm, left buttocks, and left thigh. A witness, who also responded to the hospital with Church, was also located. All four victims were transported to Christiana Hospital for surgery.

3. Your affiant can truly state that upon speaking with witness, she reported that ▊▊ and ▊▊▊▊ were sitting on ▊▊▊▊▊▊▊ with the other two males. An unknown black male (6'0", thin build, dark complexion, wearing a black t-shirt, jeans, and black ball cap) walked west past them. The subject made a statement to the effect of "watch out for the police." The subject continued around the corner. A short time later, the subject walked back towards them and began shooting several rounds at them. ▊▊▊▊ and the other three victims ran eastbound and were all struck and fell to the ground. The witness then ran to ▊▊▊▊ and flagged down a passing vehicle, then drove them to the hospital.

4. Your affiant can truly state that Det. Tabor spoke ▊▊▊▊▊▊▊▊▊▊ at Christiana Hospital. All three gave a similar account and advised that they did not know the shooters identity. ▊▊▊▊ was rushed to surgery and unable to be interviewed. However, the following day, this officer was able to speak with ▊▊ ▊▊ advised that ▊▊ and the witness were sitting with the boys in front of ▊▊▊▊ house when an unknown black male was standing near the corner of Connell Street. She advised that one of the boys made a statement to the effect of "watch out for that guy," refer to the subject on the corner. The subject then walked up to them and began shooting. She started running but was struck and fell. During a subsequent interview with ▊▊▊▊ he stated that he did not see anyone in their group shooting back because he went to the ground immediately following the initial shots. However, while on their way to the hospital he heard ▊▊▊▊▊▊▊▊ say that he shot back and though he hit the suspect. He also stated that ▊▊▊▊ did not run all the way down the block with them after the shooting.

5. Your affiant can truly state that about an hour later, this officer was advised that a vehicle was found on I95 southbound with bullet holes in it. It was a 1997 Buick Park Avenue, green in color, Delaware Registration 950020, Vin. 1G4CW52K0V4621130. The vehicle was registered to ███████, who is ███████ mother. Det. Leccia was able to locate her. She advised that she was inside the house and heard the gunshots. She went outside and saw the victims were shot. She then drove her son and the other two boys to the hospital. She stated that her vehicle was apparently struck during the gunfire. The vehicle had two obvious bullet holes in the passenger side and one to the rear windshield.

6. Your affiant can truly state that upon processing the crime scene, E.D.U. recovered seven RP 9mm shell casings. In addition, E.D.U. also recovered seven .45 caliber shell casings, three Speer casing and four Independence shell casings. Also, a .45 caliber Independence round was also recovered. This is in contradiction with the victims statements that there was only one suspect with one weapon and shows that more than one person in involved in the incident was armed.

7. Your affiant can truly state that during surgery, a large caliber projectile was removed from Burgos' buttock. Also, a large caliber projectile was removed from Church during surgery. A small caliber projectile was removed from Beltran during surgery. M/Cpl. Law (ballistics officer) inspected the removed projectiles and advised that the projectiles removed from Burgos and Church were larger than 9mm; the exact caliber is still pending further examination. In addition, a large caliber projectile was also recovered from Burgos' vehicle. Cpl. Karschner (E.D.U.) advised that the projectile entered the vehicle from an easterly direction, which is in the direction the suspect reportedly approached from not in the direction he was reportedly firing towards.

8. Your affiant can truly state that this officer took custody of ███████ clothing that was removed by hospital staff during treatment. Upon searching ███████ clothing, this officer recovered two .45 caliber Independence rounds in his rear pants pocket. The same type round recovered from the crime scene. During a door-to-door canvass, one witness also reported seeing someone run into 1316 W. 4th Street, Wilmington, Delaware, ███████ residence, after the shooting and before police arrived. In addition, the .45 caliber weapon used at the scene was not recovered inside the vehicle in which ███████ was transported to the hospital or at the crime scene. After his release from the hospital, this officer conducted a follow-up interview with ███████ at his residence, ███████████████████████ where he resides with his mother.

9. Your affiant can truly state that a search of a 120 Donhaven Drive, New Castle, Delaware 19720 and 1316 W. 4th Street, Wilmington, Delaware 19805 will be conducted in order to locate any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.

WHEREFORE, your affiant pray that a search warrant be issued authorizing the search of:

    120 Donhaven Dive, New Castle, Delaware 19720
    and
    1316 W. 4th Street, Wilmington, Delaware 19805

In a manner prescribed by law in the Daytime hours.

SWORN TO, or subscribed this 25th Day of June 2007.

Affiant
Detective Scott C. Chaffin
Wilmington Department of Police

Justice of the Peace Court 20
City of Wilmington
State of Delaware

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

**IN THE MATTER OF:**

| | |
|---|---|
| Beltran, Jamie L. (with 07/28/1990), a.k.a. "Jimmy" | ) DAYTIME |
| The entire premises known as | ) SEARCH |
| 120 Donhaven Drive, | ) WARRANT |
| New Castle, Delaware 19720, | ) AND |
| And | ) RETURN |
| 1316 W. 4th Street, | ) |
| Wilmington, Delaware 19805 | ) |
| To include any/all outbuildings, | ) |
| Exterior storage areas, and curtilages. | ) |

**THE STATE OF DELAWARE TO:** Detective Scott C. Chaffin with the assistance of any police officer or constable or any other necessary or proper person(s) assistance.

**GREETINGS;** Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that in or at; **120 Donhaven Drive, New Castle, Delaware 19720** certain property and/or persons namely: **any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.**

Which said property, articles, papers, or things were, are, or will be used and/or possessed and/or represents evidence of a violation of the Delaware Criminal Code, Title 11, Section 0613, in that Assault 1st Degree and weapon offense(s).

**NOW, THEREFORE, YOU ARE HEREBY COMMANDED,** within ten days of the date hereof to search the above named person(s), place, or thing for the property specified in the annexed affidavit and application, which is hereby incorporated herein by reference, and serving this warrant in the daytime, if the property, papers, articles or things of any part thereof, be found here, to seize it, giving the person from whom or from whose premises the property was taken a copy of the warrant and receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they represent, or, if they are not present, in the presence of at least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith.

DATED THIS 25th day of June, 2007.

_____
Justice of the Peace Court 20
City of Wilmington, State of Delaware

00000008