IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action No. 07-104-JJF |
| ) | |
| PERCY SKINNER, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S PRE-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

NOW COMES the United States of America, by and through its undersigned attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Martin C. Meltzer, Special Assistant United States Attorney for the District of Delaware, and respectfully submits the following response in opposition to the defendant's motion to suppress physical evidence and statements. For the following reason, defendant's motion should be denied.

**I. Government's Proposed Finding of Facts**

1. The issues presented before the Court are: 1) Does the defendant have standing to challenge the validity of the search warrant? 2) Was the search warrant supported by probable cause? 3) If the search warrant was not supported by probable cause, was the search valid pursuant to the "Good Faith" exception? 4) Did, the defendant make statements in violation of his Fifth Amendment right?[1]

2. As to Issue #2, the probable cause for the search warrant, the Court should consider "the totality of circumstances" found within the four corners of the affidavit of probable cause. *Illinois v.*

---

[1] The facts contained in this response are based on the evidence that the Government expects will be introduced at the hearing on the defendant's motion. Only those facts necessary to respond to the defendant's motion are stated. The Government will supplement its opposition with evidence from the record after the hearing.

1

*Gates,* 462 U.S. 312, 338 (1983); *United States v. Hodge,* 246 F.3d 301, 307 (3d. Cir. 2001). The search warrant with the supporting affidavit of probable cause is attached hereto as Exhibit 1, and is incorporated into this motion by reference. (A redacted copy of the affidavit of probable cause is attached to the government's response. An underacted copy will be made available at the hearing.)No additional testimony is required on this issue.

3. As to the defendant's standing to challenge the search warrant, the government submits the following facts. On June 25, 2007, Wilmington Police officers obtained a Justice of the Peace search warrant for 1316 W. 4th Street. The warrant authorized a search, based on the findings of probable cause, that evidence pertaining to a shooting that occurred on June 24 in front of 1316 W. 4th Street may be concealed within the residence.

4. On June 26, 2007, approximately 0700 hours, Detective Chaffin accompanied by uniform police officers of the Wilmington Police Department execute the search warrant for 1316 W. 4th Street. Upon entering the residence pursuant to the search warrant, the police officers secured the bottom floor and then proceeded to secure the upper floors for the safety of the officers.

5. On the second floor, Detective Chaffin found a closed bedroom door with no exterior door knob. As a result, the detective kicked in the door and entered. The detective found the Defendant and a female in bed. The defendant was lying on his right side, on the left side of the bed, with his left hand next to a black handgun in the vicinity of his pillow. The defendant was known to Detective Chaffin as a prior convicted felon and was immediately arrested without incident. Detective Chaffin took possession of the weapon, which was a Barretta 92FS 9mm handgun, serial # BER212088Z, that was located next to the defendant's left hand.

6. The woman in bed with the defendant was questioned about her presence in the house and stated that she was a friend of the defendant and they were only at the house about an hour prior to the arrival of the police.

7. After the defendant was transported to the Wilmington Police Station and advised of his *Miranda* warnings he also stated that he and the woman were only at the house a short time.

## II. LEGAL ARGUMENT

### A. The Defendant Cannot Establish Standing, Under the Fourth Amendment, To Contest the Validity of The Search Warrant, And Therefore Should Be Denied a Hearing

In the present case, the defendant objects to the search warrant of 1316 W. 4th Street, on the grounds that there was insufficient evidence to support the magistrates' decision. In order for him to have standing to object, he must establish a reasonable exception of privacy.

The Fourth Amendment's right to be free from unreasonable searches and seizures is a personal right and a defendant must establish standing in order to assert that right. *See United States v. Hebron*, 243 F. Supp. 2d 90, 96 (D. Del. 2003). *See also United States v. Padilla*, 508 U.S. 77, 81-82 (1993); *Government of Virgin Islands v. Williams,* 739 F.2d 936, 938 (3d Cir. 1984). The burden of establishing standing to raise a Fourth Amendment challenge rests with the defendant. *See United States v. Hebron*, 243 F. Supp. 2d at 96. *See also United States v. Salvucci*, 448 U.S. 83, 86-95 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1980).

In order to establish standing, an individual challenging a search must have a reasonable expectation of privacy in the property searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104-106 (1980). The defendant, by his own statement and the statement of the woman he was with, provides contrary evidence in support of his standing to object to the search of 1316 W. 4th Street. The woman stated that she was a friend of the defendant and that they were only at the house for about an hour prior to the arrival of the police. The defendant's statement was consistent with the woman's statement, who was in the bedroom with him. After being provided with his *Miranda* warnings, the defendant declared they were in the house for a short time.

3

The United States Supreme Court in *Minnesota v. Carter,* 525 U.S. 82 (1998) considered a case where the defendant was a temporary guest of the resident at a house that was searched pursuant to a warrant. The defendant claimed standing to assert the protection of the Fourth Amendment. In its analysis the Court stated that, "In order to claim protection of the Fourth Amendment, a defendant must demonstrate he personally has an expectation of privacy in the place searched, and that his expectation is reasonable, i.e., one that has a "source outside the Fourth Amendment either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* at 88. The Court also said, the " . . . capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* In *Carter* as in the case at bar, the defendant was only in the house for a short time. He did not live there, nor was he an overnight guest. The Court also ruled, "Thus an overnight guest in a home may claim the protection of the Fourth Amendment, but one who was merely present with the consent of the householder may not." *Id.* at 90.

The defendant has not proven standing. In the defendant's papers, he does not establish or claim he was a lessor, occupant, owner or overnight guest at the house. He proffered no items that would suggest he had any property interest in the residence. He and the woman were just temporary visitors of the upstairs bedroom.

Additionally, the defendant's activity in the house does not support a reasonable expectation of privacy. In a similar case, *United States v. Cody*, 434 F. Supp. 2d 157 (S.D.N.Y. 2006) the Court used the *Carter* analysis in determining if a defendant who was having a liaison with a woman in her hotel room could claim standing. The Court considered the activity of the couple in the hotel room and stated that an individual cheating on his wife would hope to conduct the activity in private, but the issue was, did the defendant have a legitimate expectation of privacy in the hotel room, not whether he was

4

engaged in a private activity. *Id.* at 166. The Court found, regardless of the activity, the defendant did not have an expectation of privacy and therefore did not have standing.

The defendant cannot establish any reasonable expectation of privacy since he was only in the residence about an hour before the arrival of the police. Therefore he has no standing to object to the sufficiency of the probable cause in support of the search warrant and he should be denied a hearing on the issue.

### B. There Was Probable Cause to Support the Issuing of A Search Warrant for 1316 W. 4th Street

The affidavit in support of the search warrant clearly provides a substantial basis for a fair probability that a weapon, which was involved in a shooting on June 24, could have been placed in the residence at 1316 W. 4th Street. The shooting incident involved four victims referred to herein as: victim #1, victim #2, victim #3, and victim#4. The finding of probable cause as stated in the supporting affidavit is based on following facts:

a) The location of the shooting was in front of 1316 W. 4th Street.
b) The physical evidence showed there were at least two guns involved in the shooting, a 9mm and .45 caliber.
c) The victims were shot either by a 9mm or a .45 cal. handgun which indicates there was two or more shooters.
d) The evidence directly contradicted the testimony of victim #2 and victim #4 indicating they had something to hide.
e) Victim #3 stating that he was told that Victim #4 fired back at the shooter and believed he hit him strongly indicates that one or more of the victims that were sitting on the front porch of 1316 W. 4th Street, was armed.
f) Victim #4 did not run down the street as did the other victims away from the original shooter.
g) A witness indicated that directly after the shooting and before the police arrived, an individual ran into 1316 W. 4th Street where a firearm could have been hidden.

5

h) The fact that .45 caliber ammunition was found in the back pocket of Victim #4 pants was the same type found at the scene of the shooting.

i) A door-to-door search, as well as a search of the motor vehicle owned by the owner of the searched residence provided negative results for weapons.

The above-mentioned facts clearly support sufficient information to allow the J.P. Court to make the probable cause determination at issue. The facts strongly suggest that victim #4, was also a shooter involved in the incident. The same type of ammunition that was found in the pants pocket of victim #4, was also found at the scene of the shooting. He made a statement that he shot back and may have hit the original shooter, he had a strong reason to hide his weapon, and the opportunity to hide it in 1316 W. 4th Street.

Probable cause can be and often is inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the items sought. *United States v. Jones,* 994 F. 2d 1051, 1056 (3d. Cir. 1993). In this particular crime, which was a shooting, the items that were sought were any evidence of a handgun and/or ammunition relevant to the crime that took place just outside the residence. Including the fact that one of the victims who became a suspect had the opportunity to conceal a weapon or ammunition in the residence. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983) (noting that probable cause is determined by a "totality-of-the-circumstances analysis" under which the issuing Judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

Based upon the above facts, a neutral and detached magistrate determined there was enough probable cause to issue a search warrant. The decision of a magistrate to issue a search warrant should be afforded great deference. *United States v. Harvey,* 2 F.3d. 1318, 1322 (3d.Cir. 1993) "The Court reviewing should avoid interpreting affidavits in a hyper technical rather than a common sense manner."

6

*Gates*, 462 U.S. at 236.

Therefore in consideration of the above argument, the search warrant being validly issued by a neutral and detached magistrate, permitted the Wilmington Police to lawfully enter and search the residence of 1316 W. 4th Street. Upon entering the residence, they secured it for the safety of the police officers and found the defendant Percy Skinner in an upstairs bedroom with a firearm next to his lefthand. Mr. Skinner was therefore lawfully arrested for being a person prohibited in possession of a firearm, and his motion to suppress should be dismissed.

### B. The Wilmington Police Acted on Good Faith When They Executed the Search Warrant on 1316 W. 4th Street Therefore the Defendant's Motion to Suppress Should Be Denied

If the Court concludes that the affidavit did not establish probable cause to search the residence of 1316 W. 4th Street, the defendant's motion to suppress should be denied based on the "good faith" exception to the exclusionary rule. The "good faith" exception, "Instructs that suppression of evidence is inappropriate where an officer executes a search in objectively reasonable reliance on a warrant's authority," even though no probable cause to search exist. *United States v. Hodge,* 246 F.3d 301, 307 (3d. Cir. 2001). A warrant issued by a judge, "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Untied States v. Leon,* 468 U.S. 897, 922 (1984).

There are four exceptions to *Leon*: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; [or] (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. None of those exceptions apply in this situation. The affiant did not make false or reckless

7

statements. The magistrate did not abandon his neutral and detached role. The affidavit is not lacking indicia of probable cause and it is not facially deficient.

Accordingly, if the Court were to conclude that there was not sufficient probable cause to search 1316 W. 4th Street, then the defendant's motion to suppress should still be denied based upon the "good faith" exception to the exclusionary rule.

### C. The Defendant Was Provided With His Miranda Warnings Prior to Interrogation, Therefore All His Statements Should Be Admitted

The defendant asserts that his statements subsequent to his arrest should be suppressed for violation of his Fifth Amendment right. This argument is without merit.

After the defendant was arrested, he was transported to the Wilmington Police Station. Upon the defendant's arrival at the Wilmington Police Station, Detective Chaffin provided him with his *Miranda* warnings. He understood that he did not have to talk to Detective Chaffin, but he did and by doing so he waived his Fifth and Sixth Amendment rights. The defendant then provided statements as to how long he was in the house and why he was there.

Where a defendant is given his *Miranda* rights and knowingly and intelligently waives them his statements are admissible. *Colorado v. Spring,* 479 U.S. 564, 573 (1987) Therefore, the statements provided by the defendant should not be suppressed.

COLM F. CONNOLLY
United States Attorney

By: /s/ Martin C. Meltzer
Martin C. Meltzer
Special Assistant United States Attorney

Dated: October 30, 2007

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Criminal Action No. 07-104-JJF |
| | ) |
| PERCY SKINNER, | ) |
| | ) |
| Defendant. | ) |

### ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of Defendant's Motion to SUPPRESS PHYSICAL EVIDENCE, AND STATEMENTS, and the government's response thereto, it is hereby ORDERED that defendant's motions are DENIED.

By the Court:

_____
Hon. Joseph J. Farnan, Jr.
United States District Court

# EXHIBIT 1

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

**IN THE MATTER OF:**

| | |
|---|---|
| Beltran, Jamie L. (wmh 07/28/1990), a.k.a. "Jimmy" | ) AFFIDAVIT |
| The entire premises known as | ) AND |
| 120 Donhaven Drive, | ) APPILCATION |
| New Castle, Delaware 19720, | ) FOR |
| And | ) SEARCH |
| 1316 W. 4th Street, | ) |
| Wilmington, Delaware 19805 | ) |
| To include any/all outbuildings, | ) |
| Storage areas, and cartilages. | ) |

NEW CASTLE COUNTY )
) SS
STATE OF DELAWARE )

BE IT REMEMBER, on this __25th__ DAY OF __June__ 2007.

before me, the Honorable Judge __Vernon A. Taylor__ personally appeared **Detective Scott C. Chaffin** who being by me duly sworn do depose and say: That there is reason to believe and that they do believe that located in or near: **120 Donhaven Drive, New Castle, Delaware 19720** which is/was owned or occupied by a **Jamie L. Beltran (wmh 07/28/1990)** that there has been and/or is now and/or will be located and/or concealed property, articles, papers, or things, in or at on said person(s), place(s), and/or thing(s), or on the occupant(s) thereof namely: **any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.**

Which said property, articles, and/or things were, are or will be possessed and/or used, and/or represent evidence of a violation of the Delaware Criminal Code, Title 11, Section 0613, in that Assault 1st Degree.

And, the facts tending to establish probable cause for believing that foregoing grounds for the application exists as follows:

SEE ATTACHED TEXT

IN THE
JUSTICE OF THE PEACE COURT 20
CITY OF WILMINGTON
STATE OF DELAWARE

**IN THE MATTER OF:**

| | |
|---|---|
| Beltran, Jamie L. (wmh 07/28/1990), a.k.a. "Jimmy" | ) DAYTIME |
| The entire premises known as | ) SEARCH |
| 120 Donhaven Drive, | ) WARRANT |
| New Castle, Delaware 19720, | ) AND |
| And | ) RETURN |
| 1316 W. 4th Street, | ) |
| Wilmington, Delaware 19805 | ) |
| To include any/all outbuildings, | ) |
| Exterior storage areas, and curtilages. | ) |

**THE STATE OF DELAWARE TO:** Detective Scott C. Chaffin with the assistance of any police officer or constable or any other necessary or proper person(s) assistance.

    **GREETINGS;** Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that in or at; **120 Donhaven Drive, New Castle, Delaware 19720 certain property and/or persons namely: any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.**

    Which said property, articles, papers, or things were, are, or will be used and/or possessed and/or represents evidence of a violation of the Delaware Criminal Code, Title 11, Section 0613, in that Assault 1st Degree and weapon offense(s).

    **NOW, THEREFORE, YOU ARE HEREBY COMMANDED,** within ten days of the date hereof to search the above named person(s), place, or thing for the property specified in the annexed affidavit and application, which is hereby incorporated herein by reference, and serving this warrant in the daytime, if the property, papers, articles or things of any part thereof, be found here, to seize it, giving the person from whom or from whose premises the property was taken a copy of the warrant and receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they represent, or, if they are not present, in the presence of at least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith.

DATED THIS 25th day of June 2007.

_____
Justice of the Peace Court 20
City of Wilmington, State of Delaware

1. In the continuing investigation into the illegal activities occurring within the City of Wilmington, Delaware, your affiant, Detective Scott C. Chaffin, a member of the Wilmington Department of Police, Criminal Investigation Division, was assigned to investigate a shooting that occurred in the 1300 Blk. W. 4th Street. This location is within the jurisdictional boundaries of the City of Wilmington, County of New Castle, State of Delaware. Your affiant has been employed by the Wilmington Department of Police for twelve years and has authored and executed numerous search warrants.

2. Your affiant can truly state that on the 24th of June 2007 at approximately 0140 hours, Wilmington Officers responded to the 1300 Blk. W. 4th Street regarding a complaint of shots fired. Upon arrival, officers located blood on the sidewalk and numerous shell casings. Officers were advised by bystanders that several people were reportedly stuck by the gun fire and went to St. Francis Hospital by personal vehicles. Uniform officers and this officer responded to St. Francis Hospital and located four victims, ████████ (████████), ████████s (████████), ████████ (████████1), and ████████ (████████)). ████████ had a gunshot wound to her abdomen. ████████s had gunshot wounds to his left arm and left thigh. ████████s had gunshot wounds to his left arm and left buttocks. ████████ had gunshot wounds to his left foot, left arm, left buttocks, and left thigh. A witness, who also responded to the hospital with ████████, was also located. All four victims were transported to Christiana Hospital for surgery.

3. Your affiant can truly state that upon speaking with witness, she reported that she and Church were sitting on ████████ front steps with the other two males. An unknown black male (6'0", thin build, dark complexion, wearing a black t-shirt, jeans, and black ball cap) walked west past them. The subject made a statement to the effect of "watch out for the police." The subject continued around the corner. A short time later, the subject walked back towards them and began shooting several rounds at them. ████████ and the other three victims ran eastbound and were all struck and fell to the ground. The witness then ran to ████████ and flagged down a passing vehicle, then drove them to the hospital.

4. Your affiant can truly state that Det. Tabor spoke ████████s, ████████, and ████████ at Christiana Hospital. All three gave a similar account and advised that they did not know the shooters identity. ████████ was rushed to surgery and unable to be interviewed. However, the following day, this officer was able to speak with her. She advised that she and the witness were sitting with the boys in front of ████████ house when an unknown black male was standing near the corner of Connell Street. She advised that one of the boys made a statement to the effect of "watch out for that guy," refer to the subject on the corner. The subject then walked up to them and began shooting. She started running but was struck and fell. During a subsequent interview with ████████, he stated that he did not see anyone in their group shooting back because he went to the ground immediately following the initial shots. However, while on their way to the hospital he heard "████████" (████████) say that he shot back and though he hit the suspect. He also stated that "████████" did not run all the way down the block with them after the shooting.

5. Your affiant can truly state that about an hour later, this officer was advised that a vehicle was found on I95 southbound with bullet holes in it. It was a 1997 Buick Park Avenue, green in color, Delaware Registration ▇▇▇0, Vin. ▇▇▇▇▇▇▇▇. The vehicle was registered to ▇▇▇▇▇▇, who is ▇▇▇▇▇▇' mother. Det. Leccia was able to locate her. She advised that she was inside the house and heard the gunshots. She went outside and saw the victims were shot. She then drove her son and the other two boys to the hospital. She stated that her vehicle was apparently struck during the gunfire. The vehicle had two obvious bullet holes in the passenger side and one to the rear windshield.

6. Your affiant can truly state that upon processing the crime scene, E.D.U. recovered seven RP 9mm shell casings. In addition, E.D.U. also recovered seven .45 caliber shell casings, three Speer casing and four Independence shell casings. Also, a .45 caliber Independence round was also recovered. This is in contradiction with the victims statements that there was only one suspect with one weapon and shows that more than one person in involved in the incident was armed.

7. Your affiant can truly state that during surgery, a large caliber projectile was removed from ▇▇▇▇ buttock. Also, a large caliber projectile was removed from ▇▇▇▇ during surgery. A small caliber projectile was removed from ▇▇▇▇ during surgery. M/Cpl. Law (ballistics officer) inspected the removed projectiles and advised that the projectiles removed from ▇▇▇▇ and ▇▇▇▇ were larger than 9mm; the exact caliber is still pending further examination. In addition, a large caliber projectile was also recovered from ▇▇▇▇' vehicle. Cpl. Karschner (E.D.U.) advised that the projectile entered the vehicle from an easterly direction, which is in the direction the suspect reportedly approached from not in the direction he was reportedly firing towards.

8. Your affiant can truly state that this officer took custody of ▇▇▇▇'s clothing that was removed by hospital staff during treatment. Upon searching ▇▇▇▇ clothing, this officer recovered two .45 caliber Independence rounds in his rear pants pocket. The same type round recovered from the crime scene. During a door-to-door canvass, one witness also reported seeing someone run into 1316 W. 4th Street, Wilmington, Delaware, ▇▇▇▇ residence, after the shooting and before police arrived. In addition, the .45 caliber weapon used at the scene was not recovered inside the vehicle in which ▇▇▇▇ was transported to the hospital or at the crime scene. After his release from the hospital, this officer conducted a follow-up interview with Beltran at his residence, 120 Donhaven Drive, New Castle, Delaware, where he resides with his mother.

9. Your affiant can truly state that a search of a 120 Donhaven Drive, New Castle, Delaware 19720 and 1316 W. 4th Street, Wilmington, Delaware 19805 will be conducted in order to locate any/all handgun(s), firearm(s), any/all ammunition for any handgun(s), or firearm(s), any paperwork, documentation, receipts indicating the possession, purchasing, or pawning of any handgun(s) and/or firearm(s), and any/all evidence pertinent to this investigation.

**WHEREFORE,** your affiant pray that a search warrant be issued authorizing the search of:

   120 Donhaven Dive, New Castle, Delaware 19720
   and
   1316 W. 4th Street, Wilmington, Delaware 19805

In a manner prescribed by law in the Daytime hours.

SWORN TO, or subscribed this __25th__ Day of __June__ 2007.

_____
Affiant
Detective Scott C. Chaffin
Wilmington Department of Police

_____
Justice of the Peace Court 20
City of Wilmington
State of Delaware